**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CYNTHIA HUNT PRODUCTIONS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0170 |
| | § | |
| EVOLUTION OF FITNESS HOUSTON | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Cynthia Hunt Productions, Ltd. ("CHP") filed this copyright infringement action on January 16, 2007, alleging that Evolution of Fitness Houston, Inc. ("Evo") infringed on CHP's copyrights by displaying a copyrighted video, graphic loader, and photographs on Evo's website. (Docket Entry No. 1). On February 28, 2007, this court held a hearing on CHP's application for a preliminary injunction. (Docket Entry Nos. 16, 22). On March 7, 2007, this court entered a preliminary injunction against Evo. (Docket Entry No. 20).

On May 25, 2007, CHP moved for summary judgment. (Docket Entry No. 29). Evo has not responded. CHP seeks statutory damages, attorneys' fees, and a permanent injunction under the Copyright Act, 17 U.S.C. § 101, *et seq.* Based on the pleadings, the motion, the record, and the applicable law, this court grants CHP's motion for summary judgment, enters a permanent injunction, and awards costs. CHP's motion for attorneys' fees is denied on the current record, but CHP may file an amended and supplemented motion for fees. The reasons are explained below.

1

## I.      Background

CHP produces video, graphic design, and similar services and products.  (Docket Entry No.

22 at 13–14, Hearing Transcript).  CHP was started by Cynthia Hunt, a former journalist.  (*Id*.).  Evo

is a fitness facility in Houston, Texas, owned by Shane and Renee O'Hearn.  (*Id*. at 72).  As of

February 28, 2007, Evo was not open for business but was hoping to open soon.  (*Id*. at 78).

In September 2006, Evo approached CHP seeking graphics, digital still photography, and

videos to use in Evo's website.  (Docket Entry No. 28, Ex. A, Hunt Affidavit). Cynthia Hunt at CHP

prepared a proposal for this work.  (Docket Entry No. 28, Ex. A-1).  That proposal was as follows:

```
VIRTUAL CUSTOM DESIGNED SET          $5,000
EVO LOGO & COLORS
UNLIMITED USE

FIRST GREETING                       $1,000
NOV. 1ST GREETING (ONE MONTH AWAY)   $1,000
DEC. 1ST GREETING (OPENING)     $1,000
JAN. 1ST GRAND OPENING               $1,000
PERMANENT GREETING 2007              $1,000

EVO IS FAMILY W/CLIENT TESTIMONIALS   $2,000
SUPPORT AT EVO (TRAINERS & CLASSES & NUTRITION)
                                      $2,000
TECHNOLOGY MAKING YOUR LIFE BETTER $2,000
MUSIC LICENSING FEES                 $1,575
(BLANKET LICENSE COVERS MUSIC FOR ALL VIDEOS)
DIGITAL STILL PHOTOGRAPHY W/AFTER EFFECTS
(SHOTS OF GYM & TRAINERS)            $2,000

                              TOTAL $19,575
```

(*Id*.).  The proposal included the following "BILLING BREAKDOWN (65% on Shoot Days/35%

upon Completion":

```
SEP INITIAL GREETING                 $6,000
OCT (GREETING & MUSIC LICENSING)     $2,575
NOV (GREETING)                       $1,000
```

2

DEC (GREETING, 3 VIDEOS, & STILL PHOTOGRAPHY)
$9,000
JAN (PERMANENT GREETING)                    $1,000

(*Id*.).  In September 2006, Shane and Renee O'Hearn met with Cynthia Hunt about the proposal.

(Docket Entry No. 22 at 80, Hearing Transcript).  Shane O'Hearn testified that Evo paid CHP what

Shane O'Hearn described as a $5,000 "retainer" because "we were happy with the proposal and .

. . just to kind of walk in the work, because we weren't ready yet to start shooting."  (*Id*.).  Shane

O'Hearn testified that he told Cynthia Hunt that he wanted the retainer to be applied "pro rata," with

20% of the retainer applied to each of the five videos.  (*Id*. at 81).  Shane and Renee O'Hearn

testified that by giving CHP the retainer, Evo accepted CHP's proposal.  (*Id*. at 83, 95).

Cynthia Hunt testified that the $5,000 was for the "virtual set" necessary to shoot a video for

Evo before the actual facility was ready.  (Docket Entry No. 28, Ex. A at ¶ 6, Hunt Affidavit).  The

virtual set was created by a third-party and remained that party's copyrighted property.  (Docket

Entry No. 22 at 44, Testimony of Cynthia Hunt).  Cynthia Hunt testified that it was clear from her

conversations with the O'Hearns that the $5,000 would be used to create the virtual set but would

not cover any of the other costs of making the video or related materials.  (*Id*. at 40).

Shane O'Hearn testified that Cynthia Hunt told him several times that Evo would own the

work once it was complete.  (Docket Entry No. 22 at 83, Hearing Transcript).  Cynthia Hunt testified

that Evo would not own the copyright.  (*Id*. at 45).  No final contract was drafted.  (*Id*. at 34–35).

The work CHP did for Evo varied from the proposal.  Evo agreed to the variation, accepted

the work CHP did, and used the work.  CHP did not complete the first video in September 2006 nor

the second video in October 2006, as contemplated in the proposal, because Evo was not ready for

CHP to do the work.  (Docket Entry No. 22. at 41, Testimony of Cynthia Hunt).  Instead, at the end

of November 2006, CHP produced "a comprehensive video, not a bunch of short ones." (*Id.* at 42–43). Hunt testified that this single longer video was intended to replace the four shorter videos that were originally planned in 2006. Had the parties continued to work together, another "permanent" video would have been produced after the facility was opened. (*Id.*). Hunt testified that the single longer video produced in November 2006 was "more work but for the same price in the original proposal." (*Id.* at 42). Both Shane and Renee O'Hearn were satisfied with the video that CHP prepared. (*Id.* at 77–78).

CHP also performed other work beyond the proposal. CHP created graphic design for Evo's stationery and written advertisements. (Docket Entry No. 28, Ex. A at ¶ 7, Hunt Affidavit). Renee O'Hearn testified that she asked CHP to prepare two print advertisements. CHP did the work as O'Hearn requested. O'Hearn testified that she did not know the cost until she received the invoices. (Docket Entry No. 22 at 98–99, Hearing Transcript).

On December 12, 2006, CHP sent nine invoices to Evo. (Temporary Injunction, Plaintiff's Exs. 18–26). Those invoices were for $4,823.62 for creating and printing "One Sheet"; $4,135.15 for creating and printing "Flyer"; $411.66 for business cards, letterhead, and folders; $757.75 for "Paper City Ad"; $541.25 for "Health & Fitness Ad"; $1,575.00 for "Music usage royalty for Internet"; $5,412.50 for "Virtual Custom Designed Set"; $1,082.50 for "Video Production - First Greeting"; and $1,000 for "Digital Still Photography (original quote $2,000 & half finished)." (*Id.*). The invoices totaled $12,751.93. In the proposal, $6,000 was to be paid for the "First Greeting" video planned for September 2006; $2,575 for a second video planned for October 2006; $1,000 for a third video planned for November 2006; and $6,000 for a set of videos and photography in December 2006. As noted, rather than preparing these shorter videos as set out in the proposal, CHP

prepared a single longer video in November 2006 that Evo accepted and used.  The invoices for the November 2006 video included $5,412.50 for the virtual set (of which Evo paid $5,000); $1,082.50 for video production; $1,000 for photography; and $1,575 for the music used in the video.

Shane O'Hearn testified that he received the CHP invoices around December 20, 2006. (Docket Entry No. 22 at 78, Hearing Transcript). Shane O'Hearn called CHP "repeatedly" to object to the invoices and the fact that the $5,000 was applied to the virtual set. (*Id.* at 64–65, 84–85). When Shane O'Hearn received the invoice, he believed it was incorrect because he thought that "a portion of that $5000 would be used as the purchase price of the first video," not merely as payment for the virtual set. (*Id.* at 85). Shane O'Hearn believed that Evo had purchased the video and was its owner. (*Id.*). Shane O'Hearn testified that he did not agree to apply the $5,000 to the virtual set alone. (*Id.* at 81–82, 86). This court previously found in granting the preliminary injunction that O'Hearn's testimony that the $5,000 was to be applied "pro rata" to each video was not credible. Evo did not make any payment other than $5,000 in September 2006.

On January 2, 2007, Shane O'Hearn sent an email to CHP.  In that email, Shane O'Hearn wrote, "[y]ou received $5000 four weeks prior to us using your services.  The initial agreement was for the amount of $19,575.00.  Once again all we have received is the initial greeting and the quick design of ONE add[sic], the next was a small text change and we where [sic] never given a price for the add, since Renee sat there while it was made.  I was personally under the assumption that is was done as a small favor since it was taking one of our photos and attaching text to it.  Once again we where never given a price or was told [sic] of any charge until we asked for our photos so we could have the items printed ourselves."  "[W]hat was the $5000 for? . . . This is all actually pretty crazy since you were paid in full for all work done."

On January 4, 2007, CHP's counsel sent a letter to Evo's counsel.  In that letter, CHP demanded full payment for all the invoices and insisted that Evo remove all of CHP's work from the website until payment was received.  CHP stated that Evo could continue using the stationery "if EVO will pay the invoice associated therewith."

On January 4, 2007, Evo's counsel responded, stating that the $411.66 amount invoiced for business cards and other services was "exorbitant" and that the work was unauthorized; that the $757.75 and $541.25 amounts for preparing print advertisements were improperly invoiced because the work was "being performed by CHP as an accommodation"; and that the $1,082.50 invoice for photography was incorrect because only 20% of the contemplated photo services were provided and CHP had failed to release the photographs.  Evo's counsel wrote that the remainder of the charges were improper because only one video out of the five proposed had been produced, and Evo had already paid CHP $5,000.  (*Id*.).

On January 12, 16, and 18, 2007, CHP's counsel sent letters to Evo's website host, Roadside Multimedia, Inc.  (Docket Entry No. 28, Exs. A-6 to A-8).  In those letters, CHP demanded that Roadside remove CHP's copyrighted video and photographs from www.evofit.net.  (*Id*.).  In response, Shane O'Hearn sent a letter to Roadside on January 26, 2007, protesting the removal of the material.  (Docket Entry No. 28, Ex. E).  As a result, the work remained on Evo's website until this court entered a preliminary injunction.

On February 28, 2007, this court held an evidentiary hearing on CHP's application for a preliminary injunction.  (Docket Entry Nos. 16, 22).  On March 7, 2007, this court entered a preliminary injunction against Evo.  (Docket Entry No. 20).

On May 25, 2007, CHP filed a motion for summary judgment.  (Docket Entry No. 29).  CHP

seeks a permanent injunction, statutory damages, and attorneys' fees.  Evo has not responded.

## II.      The Applicable Legal Standards

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action."  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379

F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. Exxonmobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

## III. Copyright Infringement

To prove copyright infringement, a plaintiff must show ownership of a valid copyright and actionable copying. *Galiano v. Harrah's Operating Co., Inc.*, 416 F.3d 411, 414 (5th Cir. 2005). Under the Copyright Act, "copyright ownership 'vests initially in the author or authors of the work.'" *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989) (citing 17 U.S.C. §§ 102, 201(a)). "[T]he author is generally the party "who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* However, "the employer or other person for whom the work was prepared is considered the author" if the work is a "work made for hire." 17 U.S.C. § 201(b). The Act defines two sets of circumstances in which a work is made for hire:

A "work made for hire" is—
(1) a work prepared by an employee within the scope of his or her employment; or
(2) a work specially ordered or commissioned for use as . . . a part of a motion picture or other audiovisual work . . . if the parties expressly agree in a written instrument signed by them that the work shall be

considered a work made for hire.

17 U.S.C. § 101.

Although Shane O'Hearn testified that he believed the video and other work was Evo's property after Evo paid CHP $5,000, this testimony does not raise a fact issue as to the owner of the copyright. The record shows that the parties did not execute a written instrument stating that Evo was intended to be the owner of the work. The record shows that the $5,000 Evo paid was for the virtual set used in the video, not for other work necessary to create and produce the video or for the advertising or photographs. CHP has provided copies of its registrations with the Copyright Office of "Evolution of Fitness: First Greeting," a video; "Evolution of Fitness: Print Ads (Paper City, Health & Fitness)," a group of advertisements; and "Evolution of Fitness: Photographs Accopanying First Greeting," a group of photographs. (Docket Entry No. 63, Exs. A-2 to A-4). This court finds that CHP has shown that it owned valid copyrights for the work. The record also shows that Evo was displaying copies of CHP's copyrighted works when and after this lawsuit was filed and when the preliminary injunction was entered.

Evo argued at the preliminary injunction hearing that CHP had granted Evo a license to use CHP's copyrighted video and photographs. A nonexclusive license may be granted expressly or through the conduct of the parties. *Carson v. Dynegy, Inc.,* 344 F.3d 446, 451 n. 5 (5th Cir. 2003). The Fifth Circuit uses a three-part test to determine whether a copyright holder has granted a nonexclusive license. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc*., 128 F.3d 872 (5th Cir. 1997). An implied, nonexclusive license arises when the licensee requests the creation of a work, the creator makes the particular work and delivers it to the licensee who requested it, and the licensor intends that the licensee copy and distribute the work without his participation. *Lulirama*, 128 F.3d

9

at 879 (citing *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996); *Effects Assocs. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990)); *see also Campbell v. Smythe*, 273 F.3d 1107, 1107 (5th Cir. 2001). The "totality of the parties' conduct" determines whether the creator intended to grant an implied, nonexclusive license. *Lulirama*, 128 F.3d at 879. Absent consideration, an implied license is revoked when the plaintiff files an infringement suit. *See, e.g., Carson v. Dynegy, Inc.*, 344 F.3d 446, 452 (5th Cir. 2003); *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106 (5th Cir. 1988).

CHP admits that Evo had an implied, nonexclusive license to use the work. CHP argues that the license was revoked when CHP filed this lawsuit. (Docket Entry No. 29 at 6–7). This court agrees. The nonexclusive license was revoked by CHP's filing this copyright infringement lawsuit after Evo failed to pay for the video, graphics loader, and photographs, and instead only paid $5,000 for the creation of a "virtual set." This court finds that Evo knowingly infringed CHP's copyrights by displaying CHP's copyrighted video and four photographs after the license was revoked.

CHP seeks statutory damages of $150,000.00 for the infringement of the one video and photographs, for a total of $750,000.00 in statutory damages. (Docket Entry No. 29 at 9). A copyright owner may choose between actual or statutory damages. Section § 504(c)(1) provides:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If the infringement was willful, the court has discretion to increase the statutory damages:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the

10

> court in its discretion may increase the award of statutory damages to
> a sum of not more than $150,000. In a case where the infringer
> sustains the burden of proving, and the court finds, that such infringer
> was not aware and had no reason to believe that his or her acts
> constituted an infringement of copyright, the court in its discretion
> may reduce the award of statutory damages to a sum of not less than
> $200.

17 U.S.C. § 504(c)(2). Infringement is willful if the defendant had knowledge that his conduct was

infringement or recklessly disregarded the possibility that his conduct might constitute infringement.

*See Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2nd Cir. 1999); *Broadcast Music, Inc. v.*

*Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). Statutory damages awarded for copyright

infringement should be in an amount sufficient to deter future infringement. *See F.W. Woolworth*

*v. Contemporary Arts*, 344 U.S. 228, 233 (1952). The court has discretion to award damages within

the statutory limits. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th

Cir. 1987).[1]

In *EMI April Music Inc. v. Know Group, L.L.C.*, 2006 WL 3203276, at *4 (N.D. Tex. Nov.

6, 2006), the defendants wilfully infringed on copyrighted songs in an entertainment venue after

being repeatedly offered licensing agreements by representatives for the copyright owners. The

court was guided "by the mantra that complying with the copyright laws should be less costly than

violating them." *Id.* at *4 (N.D. Tex. Nov. 6, 2006) (citing *Wildlife Express Corp. v. Carol Wright*

*Sales*, 18 F.3d 502, 514 (7th Cir.1994) ("[I]nfringers should not be free to 'sneer' in the face of the

Copyright Act."); *Int'l Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (N.D. Ill. 1987), *aff'd*,

---

[1] When a plaintiff seeks statutory damages in excess of the $750 minimum, the infringer has a
Seventh Amendment right to a jury determination of the amount of statutory damages. *Feltner v. Columbia
Pictures Television, Inc.*, 523 U.S. 340, 342 (1998). CHP seeks statutory damages far in excess of the $750
minimum. However, Evo has waived its right to a jury determination of statutory damages by failing to make
a demand for a jury trial. FED. R. CIV. P . 38(d).

855 F.2d 375 (7th Cir.1988)).   In cases involving willful infringement after a defendant has refused

a licensing offer, "courts frequently award statutory damages in amounts that are between two and

three times the license fee refused by the defendant."   *Id.* (citing *Int'l Korwin Corp.*, 855 F.2d 375,

383 (affirming damages of "approximately three times the amount that a properly purchased license

would have cost"); *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257,

1264 (S.D. Tex. 1989) (awarding $8,000 in statutory damages when $2,400 in license fees was

owed); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914-915 (awarding $1,000 each for 23

infringements when the license fees would have totaled over $16,000)).   In *EMI*, the rejected

licensing fee would have been $3,413.84, and the court awarded $10,500 in statutory damages.   *Id.*

In *International Korwin*, a nightclub owner infringed copyrights after repeated offers of a licensing

agreement; the district court awarded $1,500 for each infringement, "three times the amount a

properly purchased license would have cost."   *Id.* at 383.

   CHP provided and invoiced Evo for work that is not part of the asserted damages for

copyright infringement.   This work includes the flyer and the print advertisements.   CHP seeks

statutory damages only for the video and the use of photographs.   CHP sent Evo invoices totaling

$9,070 for the video and for the photographs.   The invoices were: $1,575.00 for music-usage

royalties; $5,412.50 for the "virtual custom designed set"; $1,000 for the video production; and

$1,082.50 for the digital still photography.   Of this amount, Evo paid $5,000, which CHP applied

to the virtual set.   The amounts invoiced differed from the proposal because the parties agreed to

modify the proposal from several shorter videos to a single longer video.

   The invoiced amount of $9,070 to create the virtual set, the video, and the related

photographs is within the parties' modified agreement and is reasonable.   Evo paid CHP $5,000,

labeled a "retainer." CHP reasonably applied the $5,000 to the virtual set. Evo failed to pay the remaining $412.50 owed for the virtual set, $1,575 for the music licensing royalty fee CHP paid, and $2,082.15 for CHP's video and photography work. Evo accepted the video and photographs and used them.

The $1,575 charge for music royalties and the $412.50 unpaid balance for the virtual set are for work by other creators and are not properly included in statutory damages for infringement of CHP's copyrighted work. CHP has not requested damages for infringement of that third-party work. For the work created by CHP and infringed by Evo, the invoiced and unpaid amounts of $1,000 for the photography and $1,082.15 for video production are consistent with the parties' agreement and are reasonable.

This court finds that Evo willfully infringed CHP's copyrights by using the video and the photographs. This court finds that Evo was invoiced $2,082.15 for CHP's video and photographs. Three times the amounts CHP invoiced Evo for this copyrighted work, or $6,246.45, is consistent with the case law and an appropriate statutory damages award. This court awards $6,246,45 as statutory damages.

## IV.    The Claim for Attorneys' Fees

As a prevailing party, CHP may recover its costs and attorneys' fees under the Copyright Act, which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. An award of attorneys' fees in copyright cases is discretionary. Attorneys' fees

are "the rule rather then the exception and should be awarded routinely." *Hogan Systems, Inc. v. Cybresource Intern., Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) (quoting *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994)).

To support its claim for attorneys' fees, CHP has submitted an affidavit by Thomas W. Sankey, counsel for CHP.  (Docket Entry No. 29, Ex. G).  Sankey asserts that CHP incurred $52,712.50 in attorneys' fees.  Sankey notes that he spent 22 hours on this case and "Thompson & Knight LLP attorneys" spent 121.10 hours.  The affidavit does not itemize the time for Sankey or the other attorneys spent.  Not does the affidavit present the lodestar amounts used for the calculation.  Finally the affidavit does not state the identities of the other attorneys and professionals working on this case.  The calculation also includes 25 hours—over 17% of the total billed—for work that did not occur: "[p]reparing a reply to the motion for summary judgment" and "[p]reparing for and arguing the motion for summary judgment."  Because Evo did not file a response, CHP filed no reply and this court did not hold argument.

Under 17 U.S.C. § 505, this court may only award "reasonable attorney's fee to the prevailing party."  Without a more detailed and accurate support for the fee request, this court cannot approve it.  The motion for attorneys' fees is denied without prejudice to CHP refiling its motion with a supplemented record.  CHP's costs are allowed.

## V.    Permanent Injunction

CHP has requested a permanent injunction under 17 U.S.C. § 502(a):

> Any court having jurisdiction of a civil action arising under this title
> may, subject to the provisions of section 1498 of title 28, grant
> temporary and final injunctions on such terms as it may deem
> reasonable to prevent or restrain infringement of a copyright.

17 U.S.C. § 502(a).  To obtain a permanent injunction, a party must demonstrate: (1) actual success

on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F .3d 597, 600 (5th Cir.1996).

CHP has succeeded on the merits. CHP has no adequate remedy at law for future infringement because the injury from future infringement cannot be fully compensated or measured in money. *Motown Record Co. v. Murray*, 2007 WL 1521475, at *2 (W.D. La. May 21, 2007). Past infringement and a substantial likelihood of future infringement support the issuance of a permanent injunction. *Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 (11 Cir.1984), *cert. denied* 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985); *see also Nat'l Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 729 (8th Cir.1986) (holding that if infringement is for commercial gain, the likelihood of future harm is presumed). The fact that Evo continued to display the material after this lawsuit further supports injunctive relief. *Superhype Pub., Inc. v. Vasiliou*, 838 F. Supp. 1220, 1223 (S.D. Ohio 1993) ("[T]he fact that the Defendant continued to infringe after the Plaintiffs filed a federal lawsuit indicates a clear danger of future infringement."). This court finds that a permanent injunction is in the public interest. *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir.1999) ("[T]he public interest, to the extent it is involved at all in this private business matter, is affirmatively served by requiring continuing, strict adherence to intellectual property law.").

A permanent injunction is entered by separate order.[2]

## VI.    Conclusion

---

[2] The permanent injunction includes an order to Evo to return or destroy the remaining copies of CHP's video, graphics loader, and photographs in Evo's possession. *See* 17 U.S.C. § 503(b) ("As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights.").

CHP's motion for summary judgment is granted.  (Docket Entry No. 29).  CHP is awarded $6,246.45 in statutory damages.  A permanent injunction is separately entered under Rule 65 of the Federal Rules of Civil Procedure.

CHP's request for attorneys' fees is denied at this time, without prejudice.  CHP may file a motion for an award of attorneys' fees with appropriate support within the time permitted under Rule 54 of the Federal Rules of Civil Procedure.

SIGNED on August 16, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

16